**BRIEF IN SUPPORT**

**I.**     ***STATEMENT OF FACTS***

       ***a.  Introduction***

       This case arises out of Plaintiff Thomas Burr's defiance of a Mount Vernon Police officer's lawful orders in the course of an investigation of a cemetery disturbance at 1:15 a.m. on August 3, 2004. Plaintiff Marie Stamp was with Burr and detained for questioning and released shortly afterward. Plaintiff Burr was arrested. Plaintiffs Burr and Stamp feel their arrest and detainment, respectively, were unlawful under Ohio and federal law. Plaintiffs' factual allegations – as opposed to legal conclusions – vividly and convincingly demonstrate that the Defendant Officers acted in compliance with constitutional mandates and cannot be held liable as a matter of law. Accordingly, this Court should grant Defendants Motion to Dismiss.

       ***b.  Background***

       On August 3, 2004 at 1:15 a.m., the City of Mount Vernon police received a citizen's complaint of a disturbance in or near the cemetery abutting Sunset Street in Mount Vernon. (Amended Comp. at ¶ 74.)  Mount Vernon police investigated and apprehended one suspect, but another suspect eluded police by running into the cemetery. (Amended Comp. at ¶ 75.) Officer Mark Perkins instructed Officer Burns to take up position on Taylor Road to apprehend the suspect. (Amended Comp. at ¶ 77.) While few people would be out at this time, Officer Burns encountered Plaintiffs near the cemetery at Taylor Road, where he was instructed to take up post immediately after the citizen's complaint. (Amended Comp. at ¶ 12.)

       On August 3, 2004 at 1:30 a.m., Officer Burns encountered Plaintiffs near the cemetery at Taylor Road, where he was instructed to take up post. (Amended Comp. at ¶ 12.) Defendant Officer

Andrew N. Burns approached the Plaintiffs and commanded both to drop to the ground in a "loud and authoritative voice." (Amended Comp. at ¶ 15.)

Plaintiff Burr apparently did not believe Officer Burns was a police officer and disregarded the officer's commands. (Amended Comp. at ¶ 18.) Nevertheless, Plaintiff Stamp identified Officer Burns as a law enforcement officer with a badge and a revolver and complied with the Officer's order. (Amended Comp. at ¶ 20.)

Despite Officer Burns' repeated commands to get on the ground, Plaintiff Burr continued to disregard those commands. (Amended Comp. at ¶ 19.) Defendant Burns identified himself as "the police" and for a **sixth time** instructed Burr to "Get on the ground, now!" (Amended Comp. at ¶ 23.) Plaintiff Burr refused this command, allegedly believing it was a prank. (Amended Comp. at ¶¶ 24-28.) Apparently Plaintiff Burr continued to move forward toward the officer, despite Plaintiff Stamp stopping and complying with the officer's instructions. (Amended Comp. at ¶ 29.)

After Officer Burns instructed Plaintiff Burr to drop to the ground no fewer than **seven times** and after Officer Burns identified **himself as a police officer** no fewer than **three times**, Plaintiff Burr alleged that he realized that Officer Burns was dressed as a Mount Vernon police officer and held a drawn weapon. (Amended Comp. at ¶ 30.) Burr then dropped to his hands and knees. (Amended Comp. at ¶ 31.) Officer Burns instructed Plaintiff Burr to lie flat on his stomach on the ground, which Burr temporarily complied with. (Amended Comp. at ¶ 32.)

Office Burns then questioned Plaintiffs Burr and Stamp as to their identity. (Amended Comp. at ¶ 33.) Disregarding Officer Burn's command to stay lying on his stomach, Plaintiff Burr raised himself from the ground. (Amended Comp. at ¶ 35.) Officer Burns forced Plaintiff Burr back down flat to the ground. (Amended Comp. at ¶ 35.) At Plaintiff's Burr's request, Officer Burns allowed Plaintiff Burr to stay on the ground only on his hands and knees. (Amended Comp. at ¶ 35, 36.)

Officer Burns continued to question Plaintiffs. (Amended Comp. at ¶ 37.) Plaintiff Burr again disregarded Officer Burns commands to keep his hands on the ground during the questioning. (Amended Comp. at ¶ 38.) Officer Burns then handcuffed Plaintiff Burr. (Amended Comp. at ¶¶ 39, 40.)

At about this time, Defendant Officer Bethany J. Marti arrived. (Amended Comp. at ¶ 41.) Officer Marti questioned Plaintiff Stamp. (Amended Comp. at ¶ 44.) Plaintiff Stamp was then released shortly after the questioning. (Amended Comp. at ¶ 48.)

Defendant Officer Burns transported Plaintiff Burr to the Mansfield Avenue side of the cemetery. Plaintiff Burr was presented to a witness for identification purposes. (Amended Comp. at ¶¶ 50-53.) Officer Burns advised Plaintiff Burr that he was being arrested for "failure to comply with an order of a police officer." (Amended Comp. at ¶ 62.) Plaintiff Burr was taken to the County Jail and detained at around 3:00 a.m. on August 3, 2004. (Amended Comp. at ¶ 32.) Plaintiff Burr was not changed with a crime while detained. (Amended Comp. at ¶ 64.) Plaintiff was released from County Jail at about 11:00 a.m. on August 4, 2004. (Amended Comp. at ¶ 65.) Plaintiff Burr alleges that he has never been charged with any crime arising out of the events on the morning of August 3, 2004. (Amended Comp. at ¶ 71.)

### c. Procedural Posture

On August 13, 2004, Plaintiffs filed a Complaint in the Court of Common Pleas of Knox County, Ohio. Plaintiffs subsequently amended their Complaint to add federal constitutional claims under Section 1983. Defendants timely removed this case to the Southern District of Ohio.

In their Amended Complaint, Plaintiffs Burr and Stamp allege federal claims against Defendants Burns and Marti for purported violations of their constitutional rights under the Fourth, Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. Presumably, Plaintiffs also theorize

that the City of Mount Vernon should be held liable under federal law for those purported violations on the basis of *respondeat superior*, and for failure to adequately train/supervise Officers Burns and Marti.

Plaintiffs also allege State claims against Defendants Burns and Marti for: 1) assault; 2) false arrest/false imprisonment; 3) battery; 4) intentional infliction of emotional distress; and 5) an intentional violation of their "constitutional rights under Article One, Section 1.14 of the Ohio Constitution." (Amended Comp. at ¶¶ 82-102.) Plaintiffs also make two State claims against the City, alleging that: 1) Mount Vernon should be held vicariously liable for the conduct of Officers Burns and Marti, and 2) Mount Vernon should be held liable for its alleged failure to adequately train/supervise.

Presuming the truth of all factual allegations made in their Amended Complaint and making all reasonable inferences in their favor, Plaintiffs have failed to state a claim upon which relief can be granted. Accordingly, Defendants respectfully request this Court to grant an Order dismissing Plaintiffs' Amended Complaint.

## II.   LAW & ARGUMENT

### a.  Motion To Dismiss Standard

A Rule 12(B)(6) motion to dismiss requires the Court to determine whether a cognizable claim has been pleaded in the complaint. In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the Motion. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The admonishment to liberally construe the plaintiff's claim when evaluating a Rule 12(B)(6) dismissal **does not relieve a plaintiff of his obligation to** satisfy federal notice pleading requirements and **allege more than bare assertions of legal conclusions.** Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596 (1969).

The Sixth Circuit clarified the threshold set for a Rule 12(B)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice

4

> pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. **But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.**

Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988) (emphasis added).

Based on the "well pled" facts and any reasonable interpretation of those facts, Plaintiffs do not state a claim that relief can be granted.

1. **Plaintiffs' Federal Law Claims Are Barred as a Matter of Law.**

   a. **Defendants cannot be held liable as a matter of law on Plaintiffs' claim for wrongful seizure under the Fourth Amendment to the United States Constitution.**

Plaintiffs claim that their Fourth Amendment rights under the United States Constitution were violated. Based on their well-pled allegations, Plaintiffs' claims are barred as a matter of law. Plaintiffs' factual allegations demonstrate conclusively that probable cause existed to arrest Plaintiff Burr and detain Plaintiff Stamp.

   1. **Plaintiffs' allegations demonstrate probable cause for Plaintiff Burr's arrest.**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Wren v. United States, 517 U.S. 806, 810 (1996).

The Fourth Amendment, as incorporated by the Fourteenth Amendment, requires the states to provide a fair and reliable determination of probable cause as a condition for any significant pre-trial restraint of liberty. Criss v. City of Kent, 867 F. 2d 259, 262 (6th Cir. 1988). An arrest does not violate the Fourth Amendment if probable cause exists for the sovereign authority's belief that a suspect has violated or is violating the law. Id., at 262. Probable cause has been defined by the United States Supreme Court as the "facts and circumstances within the officer's knowledge that are sufficient to

warrant a prudent person, or one of reasonable caution, in believing in the circumstances shown that the suspect has committed, is committing or is about to commit an offense." <u>Michigan v. DeFillippo</u>, 443 U.S. 31, 37 (1979).

Plaintiffs' allegations indicate that the officers acted not only reasonably in arresting Plaintiff Burns and detaining Plaintiff Stamp, but also indicate that the officers acted with restraint. Plaintiffs' Complaint, when reasonably construed, fails to demonstrate that the Defendant Officers did not have probable cause.

Officer Burns responded to a citizen's complaint of a disturbance near the cemetery early Tuesday morning (1:30 a.m.) on August 3, 2004. Mount Vernon Police had already apprehended one suspect and were looking for other suspects that eluded police into the cemetery. Indeed, Officer Perkins instructed Officer Burns to take up position on Taylor Road to apprehend the suspect or suspects. (Amended Comp. at ¶ 77.) While few people would be out at this time, Officer Burns encountered Plaintiffs near the cemetery at Taylor Road, where he was instructed to take up post. (Amended Comp. at ¶ 12.) This occurred virtually at the same time the report of the disturbance was made and in the area where Mount Vernon police were tracking other potential suspects. About 15 minutes separated the two events, according to the Complaint. When Officer Burns encountered Plaintiffs he was alone. He immediately ordered them into a prone position, presumably to control the situation.

Plaintiffs' Complaint unequivocally demonstrates that Plaintiff Burr disregarded Officer Burns' clear commands to lay in a prone position, even after no fewer than **seven requests**. Plaintiff Burr also disregarded those commands after Plaintiff Stamp had complied and after Officer Burns clearly identified himself as a police officer **three times**. Rather than comply, Plaintiff Burr wanted to argue

6

with Officer Burns. While he alleges that he was initially blinded by Officer Burns' flashlight, Plaintiff Stamp recognized that Officer Burr was a completely uniformed officer with a badge and gun.

Even after he knew Officer Burns was a police officer, Plaintiff Burr continued to disregard the clear commands to keep his hands on the ground, which resulted in him being handcuffed. There is nothing unreasonable about Officer Burns' conduct. Indeed, Officer Burns was alone with two possible suspects. Securing a defiant, argumentative suspect that failed to comply with a police officer's orders is certainly reasonable.

Plaintiff Burr's arrest was also reasonable and Defendants certainly had probable cause to believe that Plaintiff Burr obstructed official business under R.C. § 2921.31.

The law prohibits obstructing a police officer from performing his or her duties:

**2921.31 Obstructing official business**

(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

(B) Whoever violates this section is guilty of obstructing official business. Except as otherwise provided in this division, obstructing official business is a misdemeanor of the second degree. If a violation of this section creates a risk of physical harm to any person, obstructing official business is a felony of the fifth degree.

As alleged in Plaintiffs' Complaint, Plaintiff Burr was clearly obstructing and delaying Officer Burns' duties as a police officer. While Plaintiff Burr was arguing with Officer Burns and refusing to comply with his orders, potential suspects were at large. Most importantly, Plaintiff Burr's conduct created a serious risk of physical harm to both himself and Plaintiff Stamp. Plaintiff Burr's defiance and actions in the face of an officer with a loaded gun not only endangered himself, but also Plaintiff Stamp, who was complying with the officer's orders.

Whether Plaintiff Burr was ultimately charged with violating Ohio's obstruction laws or some other law is of no consequence to the determination before this Court. The legal issue is whether Defendants had probable cause to believe that Plaintiff Burr violated or had violated the law. *See also* Baker v. McCollan (1979), 443 U.S. 137, 145-46 (The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted -- indeed, for every suspect released.). Probable cause existed here, thus warranting dismissal of Plaintiffs' claims.

### 2. Plaintiffs' allegations demonstrate reasonable suspicion for Plaintiff Stamp's detainment.

Based on their well-pled allegations, Plaintiff Stamp's Fourth Amendment claims are barred as a matter of law. Plaintiffs' factual allegations demonstrate conclusively that a reasonable suspicion existed to detain Plaintiff Stamp.

Police are permitted to briefly stop an individual for investigation if the police have a "reasonable suspicion" that the individual has committed a crime. United States v. Palomino (6th Cir.1996), 100 F.3d 446, 449. "Reasonable suspicion" requires "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" an investigatory stop. Terry v. Ohio (1968), 392 U.S. 1, 21; United States v. Erwin (6th Cir.1998), 155 F.3d 818. The requisite level of suspicion "is considerably less than proof of wrongdoing by a preponderance of the evidence." United States v. Sokolow (1989), 490 U.S. 1, 7; McPherson v. Kelsey (6th Cir.1997), 125 F.3d 989, 993, *cert. denied*, 523 U.S. 1050 (1998). Moreover, reasonable suspicion can arise from evidence that is less reliable than what might be required to show probable cause. Alabama v. White (1990), 496 U.S. 325, 330. If police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a Terry stop may be made to investigate that suspicion." United States v. Hensley (1985), 469

8

U.S. 221.

As discussed above, as Officer Burns approached and commanded him to stop, Plaintiff Burr disregarded those clear commands and acted erratically. Plaintiff Stamp was accompanying Plaintiff Burr. Plaintiff Burr's combative and defiant actions certainly raised reasonable suspicion that were sufficient to lead Officer Burns to believe both suspects could have been involved in the cemetery disturbance.

The citizen's complaint, the other officer's report of a suspect in the immediate area, the late hour, Plaintiffs' location in the cemetery, the timing of the disturbance, and Plaintiff Burr's defiance of police commands certainly raised a reasonable belief that Plaintiff Stamp may have violated the law and was part of the complained disturbance. The circumstances certainly warranted detainment for questioning. Moreover, Plaintiff Stamp's detainment was necessary to secure the situation in which Plaintiff Burr was acting erratically in the face of clear instructions by law enforcement. Plaintiff Stamp was released shortly after being questioned. Securing Plaintiff Stamp for a small period of time (allegedly 20 minutes) in this factual situation was critical to safely controlling the situation. Plaintiffs' factual allegations provide convincing proof that reasonable suspicion existed to detain Plaintiff Burr and Plaintiff Stamp and probable cause existed to arrest Plaintiff Burr. Plaintiffs' Amended Complaint should therefore be dismissed.

> **b. Defendants cannot be held liable as a matter of law on Plaintiffs' claim for cruel and unusual punishment under the Eighth Amendment to the United States Constitution.**

Plaintiffs claim without elaboration that Defendants violated their Eighth Amendment rights under the United States Constitution. (Amended Comp. at ¶ 115.) This claim has no merit.

The Eighth Amendment's prohibition of "cruel and unusual punishments" applies only "after conviction and sentence." Graham v. Connor, 490 U.S. 386, 393 & n. 6 (1989) (*citing* Ingraham v.

Wright, 430 U.S. 651, 671 n. 40 (1977)). Pretrial detainees "are not convicted prisoners." Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir.1996). Therefore, pretrial detainees are accorded no rights under the Eighth Amendment. *See* id.

Plaintiff Burns alleged that he was "not charged with any crime." (Amended Comp. at ¶ 64.) Plaintiff Stamp makes no allegation that she was convicted of a crime. In fact, she alleges after being questioned by police, Plaintiff Stamp was released. (*See, e.g.*, Amended Comp. at ¶ 48.) Thus, Plaintiffs' Eighth Amendment claim has no merit and should be dismissed.

> **c. Defendants cannot be held liable as a matter of law on Plaintiff's claim for conspiracy to deprive Plaintiffs the right to equal protection.**

Plaintiffs allege that "Defendants Burns and Marti conspired together … with intent to deny Plaintiffs of the equal protection of the laws," but they do not define the contours of this allegation. (Amended Comp. at ¶ 114.) Plaintiffs' claims have no merit.

As an initial matter, the "intra-corporate conspiracy" doctrine bars Plaintiffs' suggestion of a civil conspiracy claim. Hull v. Cuyahoga Valley Joint Vocational School Dist., 926 F2d 505, 509 (6th Cir. 1991). It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation. The Sixth Circuit has been clear that the "intra-corporate conspiracy" doctrine has been "consistently applied in allegations of conspiracy under the Civil Rights Act." Hull, *supra* at 509. Because all of the Defendants are the agents of the same entity (i.e., the City of Mount Vernon), Plaintiffs' claim for civil conspiracy fails as a matter of law. (Amended Comp. at ¶¶ 6-7.)

Plaintiffs' claim that Defendants deprived them of their right to equal protection of the laws is equally ill fated, because Plaintiffs failed to allege the required elements of an equal protection claim. Plaintiffs have failed to allege that either of them were discriminated against because they were a

member of a protected class for equal protection purposes.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." Henry v. Metropolitan Sewer District, 922 F.2d 332, 341 (6th Cir. 1990), citing Johnson v. Morel, 876 F.2d 477, 479 (5th Cir. 1989) (en banc ).

> [T]he remedies provided in § 1983 are most appropriately extended to
> persons who, because of the unpopularity of their life-styles or the
> pervasiveness of racist animus in the community, are not protected in
> their attempt to enjoy peacefully and on an equal basis the civil rights
> guaranteed them under law.

Smith v. Ross, 482 F. 2d 33, 37 (6th Cir. 1973). Although equal protection claims are not limited to claims of racial discrimination, they do require a claim of "invidious discrimination based upon… membership in a protected class…." Bass v. Robinson, 167 F. 3d 1041, 1050 (6th Cir. 1999).

Plaintiffs have failed to allege they are members of a protected class. Therefore, Plaintiffs' claim for violation of the Equal Protection clause must fail as a matter of law.

**d. Plaintiffs' federal claims against the individual Defendants are barred by the doctrine of qualified immunity.**

Qualified immunity is an affirmative defense that shields public officials performing discretionary functions from civil damages if their conduct does not violate clearly established statutory or constitutional rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When a defendant official seeks qualified immunity, "a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 533 U.S. 194,

11

200 (2001); *see also* <u>Greene v. Barber</u>, 310 F.3d 889 (6th Cir. 2002) This is because qualified immunity is an immunity from suit, not just a defense to liability. <u>Saucier</u>, 533 U.S. at 201.

The Supreme Court has set forth a two-step analysis for determining whether an official is entitled to qualified immunity: 1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, establish that the official's conduct violated a constitutional right; and, if so, 2) whether that right was clearly established at the time the injury occurred such that the "law ... put the [official] on notice that his conduct would be clearly unlawful." Id. at 201-02. As the Court noted in <u>Saucier</u>, qualified immunity protects " 'all but the plainly incompetent or those who knowingly violate the law." ' Id. at 202 (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)). If "a reasonable officer could have believed" that his conduct was lawful "in light of clearly established law and the information the ... officer[ ] possessed," then qualified immunity should be granted to the police officer. <u>Anderson v. Creighton</u>, 107 S.Ct. 3034, 3040. "Officials are not liable for bad guesses in the gray areas; they are liable for transgressing bright lines." <u>Maciariello v. Sumner</u>, 973 F. 2d 295, 298 (4th Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993). See also, <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); <u>Wilson v. Layne</u>, 526 U.S. 603, 615 (1999); <u>Saucier v. Katz</u>, 533 U.S. 194 (2001).

Plaintiffs' Amended Complaint fails to allege that Officers Burns and Marti were plainly incompetent or knowingly violated any law when they detained Plaintiffs. Based on the information they received from the citizen's complaint about the cemetery disturbance, Plaintiffs' presence in the vicinity relative to the time of the complaint and Plaintiff Burr's erratic and suspect behavior, Officers Burns and Marti reasonably believed that they had reasonable suspicion to stop and detain Plaintiffs. Further, the above facts demonstrate that Officers Burns and Marti reasonably believed they had probable cause to arrest Plaintiff Burr. Plaintiffs'

Amended Complaint fails to demonstrate any violation of clearly established law and Officers Burns and Marti are entitled to qualified immunity with respect to Plaintiffs' claims.

As established above, no legally cognizable constitutional violation has been alleged. On this ground alone, individual Defendants are immune as a matter of law. But even assuming, *arguendo*, a constitutional violation, Plaintiffs' allegations of wrongful conduct do not rise to a level that indicates the individual Defendants violated a clearly established constitutional right. **Moreover, no factual allegation rises to the level that the individual Defendants were all but "plainly incompetent" or "knowingly violated" the law.**

Because the individual Defendants are entitled to qualified immunity, this Court should dismiss Plaintiffs' Amended Complaint with prejudice.

> **e. The City of Mount Vernon is entitled to judgment as a matter of law as to Plaintiffs' claims against the City based on the authority of Monell v. New York City Dept. of Social Svs., 436 U.S. 658 (1978).**

The law is well established that a municipality cannot be held liable on the doctrine of *respondeat superior* liability. *See, generally,* Monell v. Dept. of Social Serv. (1978), 436 U.S. 658. In the absence of a constitutional violation, there is no municipal liability under § 1983. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). As demonstrated above, no legally cognizable violation of constitutional law exists in this case. Therefore, the City of Mount Vernon cannot be held liable.

**2. Plaintiff's State Law Claims Are Barred as a Matter of Law.**

> **a. The City of Mount Vernon Is Immune From Liability On Plaintiffs' Claims Under Ohio's Political Subdivision Tort Liability Act.**

1. **Plaintiffs' claims that the City is vicariously liable for the conduct of Officers Burns and Marti and for the negligent failure to train/supervise City police officers are barred as a matter of law.**

Mount Vernon is a municipality that is a political subdivision within the definition of R.C. § 2744.01(F) and therefore it is entitled to the immunities provided in Chapter 2744 of the Revised Code (The Ohio Political Subdivision Tort Liability Act). These defenses and immunities shield Mount Vernon from the claims made in Plaintiffs' Complaint.

Chapter 2744 immunizes political subdivisions from tort liability for, *inter alia,* providing police services. Section 2744.02(A)(1) provides immunity to political subdivisions from damages for injury, death or loss to persons or property:

> For the purposes of this Chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of the Section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.  (emphasis added)

R.C. § 2744.02(A)(1); *see* Franks v. Lopez (1994), 69 Ohio St. 3d 345, 347.  A political subdivision's immunity under R.C. § 2744.02(A)(1) is subject to the five exceptions set forth in R.C. § 2744.02(B). The exceptions set forth in R.C. § 2744.02(B) apply to injuries caused by the negligent operation of a motor vehicle; the negligent performance of acts of an employee with respect to a proprietary function; the negligent failure to keep public roads in repair; the negligence of municipal employees for losses occurring within or on the grounds of public buildings; and when liability is expressly imposed upon the political subdivision by a section of the Revised Code.  None of these exceptions apply.

Upon a cursory review of the law, the provision of police services is a governmental function. Ohio's courts have repeatedly recognized that the provision of police services is a governmental

14

function. *See, e.g.,* McCloud v. Nimmer, 72 Ohio App.3d 533, 538, (1991) (*citing* Haas v. City of Akron, 51 Ohio St.2d 135, (1977), holding that police services have always been considered a governmental function, not a proprietary function). Both federal and state courts in Ohio have interpreted R.C. § 2744 as immunizing political subdivisions from tort liability for police functions. *See*, *e.g.*, Swales v. Township of Ravenna, 989 F. Supp. 925 (N.D. Ohio 1997); *see, e.g.,* Sawicki v. Ottawa Hills (1988), 37 Ohio St. 3d 222. Indeed, the law is well established that police services fit within the classic definition of governmental functions as those duties that are imposed on the State as an obligation of sovereignty.

The Supreme Court of Ohio has made clear that a political subdivision is not immune, <u>only</u> if one of the R.C. § 2744.02(B)(1-5) exceptions apply. Cater v. City of Cleveland (1998), 83 Ohio St.3d 24. Plaintiffs make two untenable claims against the City: 1) The City is vicariously liable for the conduct of Officers Burns and Marti under the doctrine of *respondeat superior* (Comp. at ¶ 104); and 2) The City is liable for failing to adequately train and supervise those Officers. First, there is no exception to immunity under the doctrine of *respondeat superior*. R.C. § 2744.02(B); Hazley v. City of Akron (9th Dist. 1998), 1998 WL 417391, unreported at *2 ("*respondeat superior* is not set forth as an exception to this general immunity"). Therefore Plaintiffs' allegations in this regard do not pierce immunity under R.C. § 2744.02. Second, there is no exception to immunity for a City's "failure to train or supervise." R.C. § 2744.02. Furthermore, there is no exception to immunity for Plaintiffs' intentional tort claims they make against the City. R.C. 2744.02(B); Wilson v. Stark Cty. Dept. of Human Serv. (1994), 70 Ohio St.3d 450, 639 N.E.2d 105 (no exceptions to immunity for the intentional torts). Therefore, as a matter of law, Plaintiffs failed to allege a viable claim against the City.

The City was engaged in the governmental function of providing police services when Officers Burns and Marti responded to the citizen's complaint in the early hours of August 3, 2004. Plaintiffs'

Amended Complaint demonstrates that no exceptions contained in R.C. § 2744.02(B) are applicable to the present action. The facts and law are undisputed, as clearly alleged in Plaintiffs' Amended Complaint and as found in binding statutory and Ohio case law. Therefore, the City of Mount Vernon is immune and this Court should dismiss Plaintiffs' Amended Complaint.

> **b.  Officers Burns and Marti did not act "with malicious purpose, in bad faith, or in a wanton or reckless manner" when they detained Plaintiffs; therefore, they cannot be held liable under R.C. § 2744.03.**

>> **1.  Officers Burns and Marti are immune from Plaintiffs' common law claims as a matter of law.**

Plaintiffs made claims against Officers Burns and Marti for: 1) assault; 2) false arrest/false imprisonment; 3) battery; 4) intentional infliction of emotional distress; and 5) an intentional violation of their "constitutional rights under Article One, Section 1.14 of the Ohio Constitution." (Comp. at ¶¶ 82-102.)

Under R.C. § 2744.03(A)(6), employees of political subdivisions are immune from liability, unless the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner. R.C. § 2744.03(A)(6)(b).[1] The definition of malice, bad faith, and wanton and reckless conduct is well established:

> 'Malice' refers to the willful and intentional design to do injury. *Jackson v. Butler Cty. Bd. of Cty. Commrs.* (1991), 76 Ohio App.3d 448, 453, 602 N.E.2d 363, 366. 'Bad faith' connotes a 'dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will

---

[1] There are two other exceptions that do not apply to the facts of this case. R.C. § 2744.03(A)(6)(a) provides an exception when "The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities." R.C. § 2744.03(A)(6)(c) provides an exception when: "Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee."

Subsection (a) does not apply as Plaintiffs' Amended Complaint clearly alleges that Officers Burns and Marti were acting within the course and scope of their employment. (Comp. at ¶¶ 6-7). Likewise, Subsection (c) does not apply as no other section of the Revised Code expressly imposes liability upon Defendants Burns and Marti.

partaking of the nature of fraud.' *Id.* at 454, 602 N.E.2d at 367, quoting *Slater v. Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148, paragraph two of the syllabus. 'Reckless' conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that this risk is greater than that necessary to make the conduct negligent. *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104-105, 559 N.E.2d 705, 707-708, citing 2 Restatement of the Law 2d, Torts (1965) 587, Section 500." The terms "willful," "wanton," and "reckless" connote a mental state of greater culpability than negligence. See *Brockman v. Bell* (1992), 78 Ohio App.3d 508, 515-516.

Hackathorn v. Preisse (9th Dist. 1995), 663 N.E.2d 384, 386. Whether Officers Burns and Marti are immune under R.C. § 2744.03(A)(6)(b) is a question of law for this Court to decide. Williams v. Franklin County Bd. of Commrs. (10th Dist. 2001), 145 Ohio App.3d 530, 546, *citing* Conley v. Shearer (1992), 64 Ohio St.3d 284, 292 (Whether an individual employee is entitled to immunity is a question of law.); *see also* Fabrey v. McDonald Village Police Dept. (1994), 70 Ohio St.3d 351, 357.

Plaintiffs' allege that the actions of Officers Burns and Marti were "performed out of malice, ill will, in bad faith, or in a wanton and reckless manner." (Amended Complaint ¶103.)  However, even if taken as true, Plaintiffs' allegations indicate that the officers acted not only reasonably but also with restraint. Plaintiffs' Amended Complaint, when reasonably construed, fails to demonstrate that Officers Burns and Marti maliciously intended to cause harm or had any ill will or ulterior motive toward Plaintiffs or that they consciously disregarded a serious risk, such that they would not be entitled to sovereign immunity under the factual allegations made in this case.

Whether Plaintiff Burr was ultimately charged with violating Ohio's obstruction laws or some other law is of no consequence to the determination before this Court.  The legal issue is whether Officers Burns and Marti acted with malice, bad faith, or in a wanton and reckless manner. Under the facts of this case, Officers Burns and Marti did not even act negligently, let alone the high standard of culpability establishing willful, wanton or reckless conduct. Plaintiffs must meet the latter standard to

17

overcome the pending Motion to Dismiss. Plaintiffs have failed to do so. Therefore, this Court should dismiss Plaintiffs' State law claims.

      **c.   Officers Burns and Marti cannot be held liable on Plaintiffs' state constitutional claims for a violation of Article 1, Section 1.14 of the Ohio Constitution as a matter of law.**

Plaintiffs claim that their rights under the "search and seizure" clause of the Ohio Constitution have been violated. Article 1, Section 14 provides:

> The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized.

Violations of rights secured under the Ohio Constitution do not, in and of themselves, confer a private right of action for damages. <u>Provens v. Stark County Board of Mental Retardation, etc.</u> (1992) 64 Ohio St. 3d 252. Unlike the federal system, where 42 U.S.C. § 1983 creates a private cause of action to remedy violation of the United States Constitution, there exists no statute in Ohio that is analogous to Section 1983. Therefore, Plaintiffs' Amended Complaint fails to state a claim against Defendants as a matter of law.

**3.  <u>Plaintiffs' claims for punitive or exemplary damages are untenable.</u>**

      **(a)   Plaintiff's punitive damages claims against Mount Vernon are barred under both State and Federal law.**

Plaintiffs claim punitive damages against all Defendants. Even assuming, *arguendo*, that the Mount Vernon is somehow liable in this action, Plaintiffs are not entitled to an award of punitive damages against Mount Vernon. The law is now well settled that in Section 1983 actions, punitive damages cannot be awarded against a municipality or its subdivisions. <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247 (1981). Under R.C. § 2744.05(A), Plaintiffs also are not entitled to

18

punitive damages on their state claims against the City. *See, e.g.,* O.R.C.2744.05 (A); <u>Spires v.</u> <u>Lancaster</u>, 28 Ohio St. 3d 76, 78 (1986).

## III.    <u>CONCLUSION</u>

Plaintiffs Thomas Burr and Marie Stamp have failed to allege facts entitling them to recover against Defendants Andrew Burns, Bethany Marti, and the City of Mount Vernon.  Therefore, this Court should grant Defendants' Motion to Dismiss.

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

s/John T. McLandrich
JOHN T. McLANDRICH (0021494)
ROBERT H. STOFFERS (0024419)
250 Civic Center Drive, Suite 400
Columbus, OH  43215
(614) 228-5931/Fax: (614) 228-5934
Email: jmclandrich@mrrlaw.com
          rstoffers@mrrlaw.com

Attorneys for Defendants City of Mount Vernon, Andrew N. Burns and Bethany Marti

19