IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION



FILED

TIME: _3:51 p.m._

AUG 1 2 2005

JAMES BONINI, Clerk
COLUMBUS, OHIO

THOMAS BURR,
    et al.,

        Plaintiffs,

vs.

                  Case No. C2-04-1118
                  Judge Edmund A. Sargus, Jr.
                  Magistrate Judge Mark R. Abel

ANDREW N. BURNS,
    et al.,

        Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' Amended

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the

Motion is granted in part and denied in part.

### I.

This matter arises as a result of the events that transpired between the Plaintiffs, Thomas

Burr, age 25, and Marie Stamp, age 18, and the Defendants, Officers Andrew Burns and Bethany

Marti, in the early morning of August 3, 2004 in the city of Mt. Vernon, Ohio. At about 1:15 a.m.,

Mt. Vernon police received a citizen's complaint of a loud disturbance in or near a local cemetery.

The police investigated the disturbance and apprehended one suspect, but another suspect eluded

police by running into the cemetery. Officer Burns was instructed to take a position on Taylor Road

near the cemetery to watch for the fleeing suspect, who was identified to the officer as a shirtless

white male.

At approximately 1:30 a.m., Plaintiffs Burr and Stamp were entering the parking lot of an apartment complex on Taylor Road when they encountered Officer Burns. Burns immediately instructed the two to drop to the ground while shining his flashlight in their faces. Plaintiffs allege that Burns did not initially identify himself as a police officer and contend that they could not see the person speaking to them because of the flashlight shining in their eyes. Eventually, Stamp was able to identify the speaker as a police officer and complied by lying down on the ground. Burr, who was still unable to identify the person speaking as a police officer, did not comply with Burns' repeated commands to get on the ground and continued walking towards him. Burr was eventually able to see past the glare of the flashlight and realized that the person speaking was wearing a police uniform and had a gun pointed at him. He, too, then complied with Burns' command to get on the ground.

While lying flat on the ground in the parking lot, Plaintiffs were interrogated by Officer Burns as to their identities and recent activities. Since the ground was wet after a rain storm, Burr asked for permission to rise to hands and knees. While he asked, he began to rise, and Officer Burns forced Burr back flat on the ground with his knee using "great force." (Amend. Compl., ¶ 35) Officer Burns then gave Burr permission to rise to his hands and knees. Burns continued to interrogate Burr from behind him.  At one point, Burr turned to look at the officer. In so doing, he rose to the fingertips of one hand.  As a result, Officer Burns told Burr to place his hands behind his back and handcuffed him. At this point, Officer Marti arrived and handcuffed Stamp.

Officer Marti then took Stamp to the back of her police cruiser and interrogated her. Stamp was then removed from the cruiser and seated on the curb while still handcuffed, where she remained for twenty minutes before Officer Marti received radio orders to release her.

Burr was placed in the cruiser and driven to the cemetery. He was taken out of the cruiser and told to stand handcuffed in front of it while a high-powered spotlight was shown on him. The police then asked an unidentified individual if this was the person who ran from the police into the cemetery. The witness said that Burr was not that person. Burr was returned to the cruiser where he was given and passed a breath exam to test for the presence of alcohol. Burr was then removed from the cruiser, partially uncuffed, and instructed to remove his shirt and stand in the spotlight again. The same unidentified individual was asked again if this was the suspect and maintained that it was not the person who ran into the cemetery. Burr nonetheless was handcuffed again and placed in the cruiser.

At approximately 3:00 a.m., the police then drove Burr to the county jail and incarcerated him for failure to comply with the order of a police officer. Burr was released from jail at about 11:00 a.m. August 4, 2004, nearly 32 hours after he was detained. While detained, Burr was compelled to provide two urine samples, was never given an explanation for his detention, nor permitted to contact an attorney. Burr was never charged with any crime arising from the incidents of that night.

Plaintiffs submitted a complaint and an amended complaint raising state law claims of assault, battery, unlawful arrest, false imprisonment, intentional infliction of emotional distress, and violations of the Ohio State Constitution, as well as various federal claims arising under 42 U.S.C. §1983 for violations of the United States Constitution. On November 23, 2004, Defendants removed the case from the Knox County Court of Common Pleas. This matter is now before the Court on Defendants' Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**II.**

Federal Rule of Civil Procedure 12(b)(6) permits a defendant, by motion, to raise the defense of a plaintiff's "failure to state a claim upon which relief can be granted." A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) "should not be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also McClain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232 (1980). The Court is authorized to grant a motion to dismiss under 12(b)(6) only where it is "clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Schuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Mayer v. Mylod*, 988 F.2d 635, 637 (6th Cir. 1993). While the Court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshal*, 898 F.2d 1196, 1199 (6th Cir. 1990), the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

Because a motion under Fed.R.Civ.P. 12(b)(6) is directed solely to the complaint itself, the Court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. *See Scheuer*, 416 U.S. at 236; *McDaniel v. Rhodes*, 512 F.Supp. 117, 120 (S.D.Ohio 1981). A federal court cannot consider extrinsic evidence in

-4-

determining whether a complaint states a claim upon which relief can be granted. *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. *United States v. School Dist. of Ferndale*, 577 F.2d 1339, 1345 (6th Cir. 1978). Fed.R.Civ.P. 8(a)(2) simply requires a "short and plain statement of the claim showing that the pleader is entitled to relief." The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Dunn v. State of Tenn.*, 697 F.2d 121, 125 (6th Cir. 1982).

## III.

Plaintiffs bring this action alleging a number of state and federal claims. The Court turns first to address the federal claims.

**A.     Wrongful seizure under the Fourth Amendment to the United States Constitution**

Plaintiffs bring federal claims under 42 U.S.C. § 1983 ("Section 1983") for unreasonable seizure and excessive force in violation of the Fourth Amendment of the United States Constitution. Defendants assert that Plaintiffs' claims for violations of their Fourth Amendment rights are barred as a matter of law because the facts alleged in their complaints are insufficient to support the claims.

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

42 U.S.C. § 1983.  Section 1983 itself creates no substantive rights, but merely provides a mechanism for aggrieved person to obtain a remedy for deprivations of rights established elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985). Section 1983 has two basic requirements: state action

which deprives an individual of federal statutory or constitutional rights. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998); *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir. 1992).

The parties do not dispute that the police officers were acting under color of state law at the time of Plaintiffs' arrests. Plaintiffs claim that Defendants Burns and Marti violated their constitutional rights under the Fourth, Eighth and Fourteen Amendments to the United States Constitution. In order to maintain their Fourth and/or Fourteenth Amendment claim under Section 1983, Plaintiffs must allege facts which, when viewed in the light most favorable to them, demonstrate that Defendants violated their right to be free from unreasonable seizure and detention. *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001). A Section 1983 wrongful arrest claimant must prove that there was a lack of probable cause to believe that the suspect had committed the charged crime. *Stemler v. City of Florence*, 126 F.3d 856, 871 (6th Cir. 1997).

Probable cause to make an arrest exists if, at the moment of the arrest, "'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.'" *Klein*, 275 F.3d at 550 (quoting *Donovan v. Thames*, 105 F.3d 291, 298 (6th Cir. 1997)). Probable cause is assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 386, 394, (1989)), and thus "probable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000). The question of probable cause, therefore, is a factually intensive one. Thus, "'in general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination

-6-

possible.'" *Klein*, 275 F.3d at 550 (quoting *Gardenhire*, 205 F.3d at 315).

### 1.    *With respect to Plaintiff Burr*

In this case, the Court concludes that more than one reasonable determination is possible on

the issue of whether the police had probable cause to arrest Plaintiff Burr. The facts as alleged

indicate that Office Burns knew that the suspect who had eluded the police when last seen was a

male, alone, shirtless, and running through the cemetery. Plaintiffs in this case met none of these

descriptions except for the fact that Plaintiff Burr was a male. Defendants assert that they acted

reasonably in arresting Plaintiff Burr because they encountered Plaintiffs shortly after responding

to the disturbance in the cemetery and because few people would be out so late at night.

Plaintiff Burr alleges that the police advised him that he was being taken to jail for a

probation violation because he allegedly failed to comply with an order of a police officer, although

he was never charged with that or any crime.  Defendants assert that Plaintiff Burr's arrest was

reasonable because the police had probable cause to believe that he had obstructed official business

in violation of Ohio Rev. Code § 2921.31, which provides as follows:

> (A)    No person, without privilege to do so and with purpose to prevent, obstruct,
> or delay the performance by a public official of any authorized act within the
> public official's official capacity, shall do any act that hampers or impedes
> a public official in the performance of that public official's lawful duties.

> (B)    Whoever violates this section is guilty of obstructing official business.
> Except as otherwise provided in this division, obstructing official business
> is a misdemeanor of the second degree.  If a violation of this section creates
> a risk of physical harm to any person, obstructing official business is a felony
> of the fifth degree.

Defendants contend that Burr's arrest under this statute was supported by probable cause

because Burr disregarded Officer Burns' numerous requests to lie in a prone position on the wet

ground and once lifted himself to his fingertips on one hand.  As such, Defendants maintain that Officer Burns acted reasonably, as a matter of law, in securing what Defendants characterize as a defiant, argumentative suspect.

Defendants' arguments depend on their characterization of Burr's behavior on the night of the arrest as belligerent and turn on the fact-sensitive issue of the reasonableness of the police officers' actions. Plaintiffs do not characterize themselves as argumentative in their Complaint.  To reject Plaintiffs' allegations as implausible would be to draw inferences in favor of the police officers, which, at the pleading state and with no evidence presented, the Court is prohibited from doing under Fed. R. Civ. P. 12(b)(6).

A t this juncture, the Court must deny Defendants' Motion to Dismiss. Taking the allegations of the Amended Complaint as true, Plaintiffs have alleged facts sufficient to raise a questions as whether probable cause existed at the time of Plaintiffs' arrest. Consequently, this Court **DENIES** the Motion to Dismiss Plaintiff Burr's claim under Section 1983 for a violation of his Fourth Amendment rights.

### 2. *With respect to Plaintiff Stamp*

Police are permitted to briefly stop an individual for an investigation if the police have a "reasonable suspicion" that the individual has committed a crime. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *United States v. Palomino*, 100 F.3d 446, 449 (6th Cir. 1996).  According to the Amended Complaint, Stamp was handcuffed, placed in the back seat of a police cruiser, interrogated by a police officer, removed from the car and made to sit on a curb, still handcuffed, for an additional twenty minutes.  Defendants argue that Stamp's companion, Burr, and his combative conduct, combined with the late hour and the timing of the disturbance raised a reasonable suspicion that

Stamp may have violated the law.  Defendants contend that securing Plaintiff Stamp for a short period of time was critical to controlling the situation.

Pursuant to *Terry*, the police may carry out an investigative stop based upon reasonable suspicion the individual is engaged in criminal activity.  Further, the police may pat down an individual for weapons attendant with that stop. *Terry* 392 U.S. at 22-24.  In particular, the Supreme Court held in *Terry*:

> Where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Id.,* at 30.  Defendants assert that they had a sufficient basis to stop and detain Stamp for further investigation chiefly because it was late and Burr was allegedly acting erratically.

At the pleading stage, it is impossible in the absence of a factual record, to assess whether Officer Burns reasonably determined that Plaintiff Stamp was engaged in criminal activity and whether he had a reasonable fear that she presented a safety risk to him or others.  Stamp alleges that she was arrested within the meaning of the Fourth Amendment– she was not free to leave; an officer had previously drawn his weapon and directed it at her; she had been handcuffed and locked in the back seat of a police cruiser.  *See United States v. Mendenhall*, 446 U.S. 544 (1980)(describing probative circumstances that constitute an arrest).  Because arrests may constitutionally be made only on probable cause, the reasonable suspicion standard does not apply.

Accordingly, the analysis as applied to Plaintiff Burr applies equally to Plaintiff Stamp. Ordinarily, the existence of probable cause in a Section 1983 action presents a jury question, unless there is only one reasonable determination possible. The Court similarly concludes, as it did for Plaintiff Burr, that the pleading of the Stamp, if believed, states claims under the Fourth and Fourteenth Amendments. The Court is not to weigh evidence or credibility at this stage. Consequently, this Court **DENIES** the motion to dismiss Plaintiff Stamp's claim under Section 1983 for violation of her Fourth Amendment rights.

**B.     Cruel and unusual punishment under the Eighth Amendment to the United States Constitution**

Defendants assert that Plaintiffs' claim for violation of their Eighth Amendment rights is barred as a matter of law because the prohibition against cruel and unusual punishment only applies after conviction and sentence.[1] The Court agrees.

The Eighth Amendment's protections do not attach until after conviction and sentence. *Graham v. Connor*, 490 U.S. 386, 393, n.6 (1989)(citing *Ingraham v. Wright*, 430 U.S. 651, 671, n. 40 (1977)). Because the alleged use of force occurred during the course of Plaintiff's arrest, the claim must be judged under Fourth or Fourteenth Amendments, rather than Eighth Amendment, standards. *Id.* In *McDowell v. Rogers*, 863 F.2d 1302, 1306 (6th Cir. 1988), the Sixth Circuit held that "the seizure which occurs when a person is arrested continues throughout the time the person remains in the custody of the arresting officers." Additionally, the Supreme Court has indicated quite clearly that, "[t]he Cruel and Unusual Punishments Clause 'was designed to protect those convicted of crimes,' and consequently the Clause applies 'only after the State has complied with the

---

[1]     Plaintiffs did not address Defendants' Eighth Amendment arguments in their Memorandum in Opposition.

-10-

constitutional guarantees traditionally associated with criminal prosecutions.'" *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (citations omitted) (quoting *Ingraham*, 430 U.S. at 671, n. 40).

Because Plaintiffs allege that they were never formally prosecuted, (Amend. Compl. at ¶ 64.), Plaintiffs' claim for violation of their Eighth Amendment rights is barred as a matter of law. Consequently, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' claims under Section 1983 for violations of their Eighth Amendment rights.

**C.     Equal Protection violation under the United States Constitution**

Plaintiffs claim that "Defendants Burns and Marti conspired together . . . with intent to deny Plaintiffs of the equal protection of the law . . . ." (Amend. Compl. at ¶ 114.)  Defendants maintain that their claim under the Fourteenth Amendment is barred as a matter of law for failure to identify a protected class to which Plaintiffs belong.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center.*, 473 U.S. 432, 439 (1985).  In a claim for a civil conspiracy under 42 U.S.C. § 1983, a plaintiff must plead that (1) the defendants entered into an agreement to violate the plaintiffs' rights; (2) the defendants shared a general objective to deprive the plaintiffs of their rights; and (3) an overt act was committed in furtherance of the conspiracy that caused injury to the plaintiffs.  *See Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

Furthermore, it is well-settled that conspiracy claims must be pled with some degree of particularity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under Section 1983.  *Id.*; *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39

-11-

(6th Cir. 1987) (citing as example *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984) which found a conspiracy claim properly dismissed where "complaint merely alleged broad conclusory negligence language void of the factual allegations necessary to support a conspiracy theory").[2]

Plaintiffs here have not alleged that the police officers entered into an agreement to violate the Plaintiffs' rights or that the Defendants shared a general objective to do so. Moreover, Plaintiffs have failed to plead any facts, conclusory or otherwise, that support an alleged conspiracy between the police officers. In sum, Plaintiffs' allegation of conspiracy is as follows:

> Defendants Burr and Marti conspired together for the purpose of impeding, hindering, obstructing or defeating the due course of justice in the State of Ohio with intent to deny Plaintiffs of the equal protection of the laws, in that Defendants Burns and Marti, pursuant to the conspiracy, caused the Plaintiffs to be unlawfully arrested, threatened at gunpoint, assaulted, detained, imprisoned, battered and harassed.

(Amend. Compl., ¶ 114.)

These general and conclusory allegation are far too vague to support a Section 1983 conspiracy claim. Moreover, Plaintiffs have not addressed their conspiracy claim in their Memorandum in Opposition and have not sought leave to amend. Consequently, this Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' claim under Section 1983 for violations of their Fourteenth Amendment Equal Protection rights.

--------

[2]     This is not to say that civil rights conspiracy claims must be pled with "specificity" as that term is used in Fed. R. Civ. P. 9. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, (1993)(rejecting Fifth Circuit's requirement that § 1983 suits against municipalities must be pleaded with factual specificity) and *Swierkiewicz v. Soreman*, 534 U.S. 506 (2002)(rejecting heightened pleading standards in Title VII and age discrimination case). Still, courts generally require plaintiffs to produce specific, nonconclusory factual allegations to support their claims. *Spadafore,* 330 F.3d at 854 ("[C]onspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983); *Goad v. Mitchell,* 297 F.3d 497, 504-05 (6th Cir. 2002)(holding that district courts are required to compel plaintiffs to produce specific, nonconclusory factual allegations of improper motive before discovery in cases in which the plaintiff must prove wrongful motive and in which the defendant raises the affirmative defense of qualified immunity).

**D.      Qualified Immunity**

Defendants assert that they are entitled to qualified immunity from Plaintiffs' federal claims

under Section 1983. The doctrine of qualified immunity provides that, in civil suits for monetary

damages, government officials acting in their official capacity and performing discretionary

functions are generally shielded from liability "insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."

*McLaurin v. Morton*, 48 F.3d 944, 947 (6th Cir. 1995) (citing *Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982)).

Qualified immunity involves a multiple-step inquiry. The Court must determine (1) whether,

based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that

a constitutional violation has occurred; (2) whether the violation involved a clearly established

constitutional right of which a reasonable person would have known; and (3) whether the plaintiff

has offered sufficient evidence "to indicate that what the official allegedly did was objectively

unreasonable in light of the clearly established constitutional rights." *Feathers v. Aey*, 319 F.3d 843,

847 (6th Cir. 2003)(quotations and citations omitted); *see also Saucier v. Katz*, 533 U.S. 194 (2001).

The Court has already determined that Plaintiffs have stated a claim for a violation of their

Fourth Amendment rights, which were clearly established at the time of the alleged violation.

Therefore, under *Saucier*, the only question that remains "is whether it would be clear to a reasonable

officer that his conduct was unlawful in the situation he confronted." *Id*. This is, however, an

inherently fact-specific inquiry that requires a determination by a finder of fact in the context of this

case. At this juncture, issues of fact remain for discovery at least on the issue of probable cause,

precluding at this stage a fact-based analysis of whether the Defendants are entitled to qualified

to qualified immunity. As for the pleadings, Plaintiffs have stated facts from which a fact finder could determine that a reasonable officer knew his conduct was unlawful in the situation. Accordingly, this Court **DENIES** Defendants' Motion to Dismiss to the extent Defendants argue that they are entitled to qualified immunity.

**E.      Section 1983 liability for a municipality**

Plaintiffs allege, *inter alia*, that "the City of Mount Vernon, as the employer of Officer Burns and Officer Marti, is financially responsible for the misconduct of its employees . . . toward Stamp and Burr, under the doctrine of respondeat superior." (Amend. Compl., ¶ 110.) Defendants maintain that municipalities such as Mount Vernon cannot be held liable for the unconstitutional acts of their employees for purposes of liability under Section 1983. Indeed, the Supreme Court stated clearly in *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978), that municipalities may be liable under Section 1983 only for their own policies and practices and not the individual actions of employees. A municipality may only be held liable under Section 1983 when (1) a constitutional violation has occurred and (2) the municipality "is responsible for that violation." *Doe v. Claiborne County, Tenn. ex rel. Claiborne*, 103 F.3d 495, 505 (6th Cir. 1996). The doctrine of *respondeat superior* does not apply; a governmental entity cannot be held liable under Section 1983 based solely upon allegations that an employee or agent inflicted an injury. *Monell*, at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

To the extent Plaintiffs contend in their Amended Complaint that the City of Mount Vernon is responsible for Plaintiffs' Section 1983 claim under the doctrine of *respondeat superior*, that

assertion clearly fails. Plaintiffs, however, also allege in their Amended Complaint that the City of Mount Vernon failed to adequately train Officers Burns and Marti. (Amend. Compl. ¶¶ 111, 112, 116.) Ultimately, to satisfy the *Monell* requirements for their failure to train claim, Plaintiffs are required to "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir.1987) (adopting the test articulated in *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.1984) (en banc)). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. . . . Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).

Plaintiffs assert that the City of Mount Vernon "failed in its duty to adequately train and supervise Officer Burns and Officer Marti so as to prevent, preclude and prohibit them from . . . violating their constitutional rights. (Amend. Compl., ¶ 112.) Plaintiffs aver that the acts of the police officers "were proximately caused by certain customs and polices of the City of Mount Vernon. . . ." (Amend. Compl., ¶¶ 116.) Based on a review of the Amended Complaint and these allegations in particular, the Court finds that Plaintiffs have minimally satisfied the requirements of *Monell* and its progeny in alleging municipal liability under Section 1983 sufficient to survive a Rule 12(b)(6) motion to dismiss. Consequently, this Court **DENIES** Defendants' Motion to Dismiss Plaintiffs' Section 1983 claims against the City of Mount Vernon.

**F.**     **Immunity under Ohio's Political Subdivision Tort Liability Act**

   *1.*     *Municipal immunity under Ohio Rev. Code § 2744.02(A)*

Defendants assert that the Ohio Revised Code provides immunity to the City of Mount Vernon for the tortious acts of its employees. In particular, Chapter 2744 provides immunity to political subdivisions from tort liability for, among other things, providing police services. Section 2744.02(A)(1) of the Ohio Revised Code limits municipal liability under state law to those causes specified in division (B) of the statute. Division (B) provides exceptions for negligent operation of a motor vehicle, wantonly exceeding discretionary powers, negligently failing to keep roads in repair, negligent actions that lead to injury within public buildings, or when liability is expressly imposed by statute. Ohio Rev. Code § 2744.02(**B**). None of these exceptions applies to Plaintiffs' claims. Therefore, the general rule providing for statutory immunity applies to the state law claims asserted against the City of Mount Vernon. Consequently, this Court **GRANTS** Defendants' Motion to Dismiss in so far as the City of Mount Vernon is not liable in damages for Plaintiffs' state tort claims pursuant to Ohio Rev. Code § 2744.02(**A**)(1).

   **2.**     *Officers' immunity under Ohio Rev. Code  § 2744.03(A)*

Defendants assert that Ohio Revised Code § 2744.03(A) provides immunity to Officers Burns and Marti from state tort liability in regard to Plaintiffs' claims for assault, battery, false arrest, false imprisonment, and intentional infliction of emotional distress. Section 2744.03(A) provides immunity for employees of a political subdivision unless specifically excepted by statute. Division (A)(6)(b)of this statute states that immunity applies unless, "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."

-16-

Plaintiffs' complaint specifically alleges that "[t]he actions of Officers Burns and Marti toward Plaintiffs, as detailed above, were performed out of malice, ill will, in bad faith, or in a wanton and reckless manner." (Amend. Compl. ¶ 103.) Additionally, Plaintiffs allege facts that, if interpreted in a manner most favorable to the Plaintiffs, as required for a Rule 12(b)(6) motion, sufficiently plead a valid claim under Ohio law. Therefore, the Court **DENIES** Defendants' Motion to Dismiss the state tort claims against Officers Burns and Marti.

**G.      Violation of Article 1, Section 1.14 of the Ohio State Constitution**

Defendants move to dismiss Plaintiffs' claims for violations of Article 1, Section 1.14, the "search and seizure" clause of the Ohio State Constitution. Defendants argue that the State of Ohio has no independent enforcement provisions for such violations and that no private right of action exists under the Ohio constitution when other reasonably satisfactory remedies are available.

Article 1, Section 1.14 mirrors the Fourth Amendment to the United States Constitution and provides as follows:

> The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized.

In *Provens v. Stark Cty. Bd. of Mental Retardation*, the Ohio Supreme Court determined that there is no private cause of action for torts allegedly arising under the Ohio constitution. 64 Ohio St. 3d 252, 261, 594 N.E.2d 959, 966 (1992). Relying on *Bush v. Lucas*, 462 U.S. 367 (1983), the court declined to create new "constitutional torts." *Provens*, 64 Ohio St. 3d at 256-7, 594 N.E.2d at 962. Ultimately, the Ohio Supreme Court concluded:

> [T]here [is] no private constitutional remedy for the plaintiff-appellant's claims in that the Ohio Constitution itself does not provide for a civil damage remedy. Further, in that there are rather extensive legislative and regulatory schemes providing for the brining of complaints and charges emanating from civil rights violations, . . . the

-17-

plaintiff has sufficiently broad and inclusive remedies for her alleged wrongs.

64 Ohio St. 3d at 261, 594 N.E.2d at 966.

As applied to this case, Plaintiffs' claim under the search and seizure provisions of the Ohio Constitution is a restatement of their federal claim under the Fourth Amendment to the United States Constitution. Section 1983 provides a full panoply of remedies for a search and seizure claim under the United States Constitution. Because violations of rights secured under the Ohio Constitution do not, in and of themselves, confer a private right of damages and because a full remedy is available to Plaintiffs without invoking the protections of the state constitution, this Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' claim for violations of the Article 1, Section 1.14 of the Ohio State Constitution.

**H.      *Punitive and exemplary damages claim***

Defendants assert that Plaintiffs' federal and state punitive damage claims against the City of Mount Vernon are barred as a matter of law.   It is now well-established that municipalities and government agencies cannot be held liable for punitive damages. In *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260 (1981), the Supreme Court discussed the disproportionate impact of a court-ordered award of punitive damages on the public fisc and noted that such an award affects innocent persons in a manner contrary to justice. The Court quoted the Louisiana Supreme Court in arriving at its conclusions:

> Those who violate the laws of their country, disregard the authority of courts of justice, and wantonly inflict injuries, certainly become thereby obnoxious to vindictive damages. These, however, can never be allowed against the innocent. Those which the plaintiff has recovered in the present case . . . , being evidently vindictive, cannot, in our opinion, be sanctioned by this court, as they are to be borne by widows, orphans, aged men and women, and strangers, who, admitting that they must repair the injury inflicted by the Mayor on the plaintiff, cannot be bound beyond

-18-

that amount, which will be sufficient for her indemnification.

*Id.* at 262 (quoting *McGary v. President & Council of the City of Lafayette*, 12 Rob. 668, 677 (La.1846)).

Furthermore, Ohio state law prohibits the award of punitive damages against a municipality or political subdivision for claims under state law. Ohio Rev. Code § 2744.05(A).  This statute is merely the codification of the long-standing common law in this and nearly every other state. *See Spires v. City of Lancaster*, 28 Ohio St. 3d 76, 78 (1986). Consequently, this Court finds that Plaintiffs' claims, both federal and state, against the City of Mount Vernon for punitive damages are barred as a matter of law and Defendants' Motion to Dismiss these claims is therefore **GRANTED**.

## IV.

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART** to the extent stated above in this Opinion and Order.

**IT IS SO ORDERED.**

8 - 12 - 2005
_____          _____
**DATED**                                        **EDMUND A. SARGUS, JR.**
                                                 **UNITED STATES DISTRICT JUDGE**