IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THOMAS BURR, et al.,

    Plaintiffs,

vs.

ANDREW BURNS, et al.,

    Defendants.

Case No. 2:04-cv-1118

Judge Edmund A. Sargus Jr.
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the reasons that follow, the Motion is granted in part and denied in part.

### I.

This matter arises following events that transpired between the Plaintiffs, Thomas Burr, age 25, and Marie Stamp, age 18, and the Defendants, Officers Andrew Burns and Bethany Marti. In the early morning of August 3, 2004 in the City of Mt. Vernon, Ohio, at approximately 1:15 a.m., Mt. Vernon police received a citizen's complaint of a loud disturbance in or near a local cemetery. The police investigated the disturbance and apprehended one suspect, but another eluded police by running into the cemetery. Officer Burns was instructed to take a position on Taylor Road near the cemetery to watch for the fleeing suspect, who was identified to the officer as a shirtless white male with the alias of Ted Laylor.

At approximately 1:30 a.m., Plaintiffs Burr and Stamp were entering the parking lot of an apartment complex on Taylor Road when they encountered Officer Burns. According to Plaintiffs, Burns immediately instructed the two to drop to the ground, while shining his flashlight in their faces. Officer Burns, however, contends that he first instructed Plaintiffs to stop, and only when

Plaintiff Burr continued to walk towards him, did he instruct both to drop to the ground.

Plaintiffs also allege that Burns did not initially identify himself as a police officer and that they were unable to see the person speaking to them because of the flashlight shining in their eyes. Thus, ignoring Defendant Burns' orders, Plaintiffs continued to walk toward Officer Burns. Burns, however, contends that he identified himself as a police officer from the beginning of the incident and that although Burr continued to walk, Stamp immediately stopped walking towards him.

According to Plaintiffs, Stamp was eventually able to identify the speaker as a police officer and complied by lying down on the ground. Burr, who was still unable to identify the person speaking as a police officer, did not comply with Burns' repeated commands to get on the ground. Burr continued walking towards Burns, asking the identity of the speaker. After numerous commands to drop to the ground, Burr was eventually able to either see past the glare of the flashlight to realize that the person speaking was wearing a police uniform and had a gun pointed at him. He then complied with Burns' command to get on the ground.

While lying flat on the ground in the parking lot, Plaintiffs were interrogated by Officer Burns as to their identities and recent activities. Since the ground was wet, Burr asked for permission to rise to his hands and knees. While he asked, he began to rise, and Officer Burns, according to Burr, gently placed his knee on Burr, forcing him back to the ground. (Burr Depo., p.147). Officer Burns then gave Burr permission to rise to his hands and knees. Burns continued to interrogate Burr from behind him. At one point, Burr turned to look at the officer. In so doing, he rose to the fingertips of one hand. As a result, Officer Burns told Burr to place his hands behind his back and handcuffed him. Shortly thereafter, Officer Marti arrived and handcuffed Stamp.

Officer Marti then took Stamp to the back of a police cruiser and interrogated her. Stamp was then removed from the cruiser and seated on the curb while still handcuffed, where she remained for twenty minutes before Officer Marti received radio orders to release her.

Burr was subsequently placed in the cruiser and driven to the cemetery. He was taken out of the cruiser and told to stand handcuffed in front of it while a high-powered spotlight was shown on

him. The police then asked the apprehended suspect, Heath Mickey, if Burr was the person who ran from the police into the cemetery. Mickey said that Burr was not that person. Burr was returned to the cruiser where he was given and passed a breath exam to test for the presence of alcohol. Burr was then removed from the cruiser, partially uncuffed, and instructed to remove his shirt and stand in the spotlight again. Mickey was asked again if the now shirtless Burr was the suspect and Mickey again stated he was not. Burr nonetheless was re-handcuffed and placed in the cruiser.

At approximately 3:00 a.m., the police, on the request of Burr's probation officer, Rene Joris, then drove Burr to the Knox county jail and incarcerated him for possibly violating his probation by failing to comply with the order of a police officer. Plaintiff Burr contends that Joris was given false information, namely that he had tried to flee from Burns, which led Joris to request his arrest. On August 4, 2004, at the request of Joris, Burr was released from jail, nearly 32 hours after he was first detained. According to Burr, during this time, he was compelled to provide two urine samples, was never given an explanation for his detention, and was not permitted to contact an attorney. Burr was not charged with any crime or probation violation arising from the incidents of that night.

Plaintiffs allege that these events have caused them to suffer from bad dreams, flashbacks, and fear of police as well as sleeplessness and anxiety. (Pls' Mem. in Opp., at p. 22). Plaintiffs, however, have not sought medical attention for said ailments, nor have they suffered any lost wages because of such injuries. Plaintiffs contend that their detainment was unnecessary because Officer Burns was looking for a shirtless male named Ted Laylor running from the cemetery. Stamp, obviously, failed to exhibit any such qualities. Burr, likewise, was neither shirtless, out of breath from running, or named Ted Laylor–a fact of which Burr contends Officer Burns should have been aware of because Burns had testified against Plaintiff Burr in a criminal trial only six weeks previously. Instead, Plaintiffs allege that their arrests were result of a malicious purpose because both Defendant police officers as well as the other police officer on the scene, Mark Perkins, were witnesses for the prosecution of Burr in the above-mentioned criminal trial, in which Burr was acquitted.

Plaintiffs' amended complaint contains state law claims of assault, battery, unlawful arrest, false imprisonment, and intentional infliction of emotional distress, as well as various federal claims arising under 42 U.S.C. § 1983 for violations of the United States Constitution. On November 23, 2004, Defendants removed the case from the Knox County Court of Common Pleas. On August 12, 2005, this Court partially granted Defendants' Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The remaining claims, including claims against the City of Mount Vernon, are now before the Court on the Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

## II.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making

credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party may not rest upon its mere allegations but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

### III.

Plaintiffs bring federal claims under 42 U.S.C. § 1983 (Section 1983) for unreasonable seizure in violation of the Fourth Amendment of the United States Constitution. Defendants contend that Plaintiffs' claims for such violations are unsupported by the record and that this Court should accordingly grant summary judgment in their favor pursuant to Fed. R. Civ. P. 56.

> Section 1983 provides in pertinent part:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. Section 1983 creates no substantive rights, but merely provides a mechanism for aggrieved persons to obtain a remedy for deprivation of rights established elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985). Section 1983 has two basic requirements: state action which deprives an individual of federal statutory or constitutional rights. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998); *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir. 1992).

Here, the parties do not dispute that the police officers were acting under color of state law at time of the incidents giving rise to Plaintiffs' claims. In order to avoid a summary judgment, therefore, Plaintiffs must present evidence that, when viewed in the light most favorable to them,

a reasonable juror could find in their favor that Defendants violated their constitutional rights under the Fourth Amendment.

### A. Wrongful Detainment

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures including unreasonable arrests by law enforcement officers without probable cause. Police officers, however, may briefly detain an individual "if they have a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if they lack probable cause under the Fourth Amendment." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

The criteria for a reasonable-suspicion detainment, commonly referred to as a *Terry* stop, are significantly less arduous than the probable cause requisite for arrests. Detaining under reasonable suspicion requires only that the police officer, "'in light of his experience,' be able to conclude reasonably that illicit activity might be in progress." *Spear v. Sowders*, 71 F.3d 626, 631 (6th Cir. 1995). Moreover, the evidence supporting such conclusion may be "less reliable" than what is required for probable cause. The Court must view the officer's conclusion in light of the "totality of the circumstances." *Alabama v. White*, 496 U.S. 325, 330 (1990). Thus, to survive a motion for summary judgment, a Section 1983 wrongful detainment claimant must offer evidence that could lead a reasonable juror to conclude that the detaining officer failed to have a reasonable suspicion for conducting a *Terry* stop.

Plaintiffs Burr and Stamp maintain that Defendants violated their Fourth Amendment rights by unlawfully detaining them without a reasonable, articulable suspicion that they were engaged in illegal activity. The Court concludes that a reasonable juror could rule in favor of Plaintiffs on their Fourth Amendment claims of wrongful detainment and therefore **DENIES** Defendants' Motion for Summary Judgment with respect to this claim. The undisputed facts indicate that Officer Burns knew that the suspect who had eluded the police was a male, alone, shirtless, reportedly named Ted Laylor, and was last seen running through the cemetery in an eastwardly direction. Plaintiff Stamp

met none of these descriptions, whereas Plaintiff Burr only shared the suspect's sex. Plaintiffs also contend that the location of the detainment, a mile away from the original complaint, was too attenuated to produce a valid reasonable suspicion that Burr could be the sought-after suspect. Moreover, Plaintiffs contend that Officer Burns' prior encounters with Plaintiff Burr, namely the fact that he had testified against Burr six weeks earlier in an unrelated criminal trial, invalidates the claim that Officer Burns reasonably suspected him to be Ted Laylor. Indeed, Plaintiffs allege that their detainment, and Burr's subsequent arrest, were the result of a malicious purpose given that all officers involved (Burns, Marti, and Perkins) had testified for the prosecution in Burr's previous trial that resulted in Burr's acquittal just six weeks earlier. (Pl.'s Mem. in Opp., at p. 19).

Defendants, however, assert that the detainment of Plaintiffs was valid under the reasonable suspicion standard primarily because: (1) there was a citizen complaint of a disturbance in the area; (2) it was late at night when very few people were in the area; (3) Burr and Stamp were walking near, or at least in the vicinity of, the cemetery; (4) the suspect was last seen fleeing on foot; (5) Burr and Stamp were on foot; (6) Plaintiffs were carrying backpacks, in which a shirt could have been stored and later put on once Burr fled the original scene; (7) Defendants had no personal knowledge of a man named Ted Laylor, nor any reason to believe that was the correct name of the suspect; (8) Burr was acting erratically; and (9) Stamp was accompanying Burr, a possible suspect, suggesting she too might have been involved in criminal activity.

The Court recognizes that the reasonable suspicion standard is not a demanding one to meet; however, this specific claim turns on the fact-sensitive issue of whether Officer Burns had reasonable suspicion to make a *Terry* stop. Drawing all reasonable inferences in favor of Plaintiffs, as alleged; that the Plaintiffs failed to possess many of the characteristics of the suspect; and that the location of the incident is arguably not near where the original complaint was made, Plaintiffs have raised enough evidence from which a jury could reasonably find for them. Thus, the Court **DENIES** Defendants' Motion for Summary Judgment as to Plaintiffs' claim for a violation of the Fourth Amendment in respect to their original detainment.

### B. Probable Cause for Arrests

Plaintiffs additionally allege that Defendants violated their Fourth Amendment rights by wrongfully arresting them. A Section 1983 wrongful-arrest claimant must prove that there was a lack of probable cause to believe that the suspect had committed a crime. *Devenpeck v. Alford*, 543 U.S. 146, 156 (2004); *Stemler v. City of Florence*, 126 F.3d 856, 871 (6th Cir. 1997). Probable cause to make an arrest exists if, at the moment of the arrest, "'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.'" *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (quoting *Donovan v. Thames*, 105 F.3d 291, 298 (6th Cir. 1997)). Probable cause is assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 1997) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)), and thus "probable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000). The question of probable cause, therefore, is a factually intensive one. Thus, "in general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Klein*, 275 F.3d at 550 (quoting *Gardenhire*, 205 F.3d at 315).

### 1. *With Respect to Plaintiff Burr*

Without resolving an issue that is triable to a jury, the Court finds that a reasonable juror could conclude the police lacked probable cause for Plaintiff Burr's arrest. Defendants contend that probable cause existed to arrest Burr, as a matter of law, because he ignored Officer Burns' numerous commands to lie in a prone position. Defendants also contend that the existence of probable cause is supported by the fact that Burr argued with Officer Burns before complying with his orders and disregarded clear commands to keep his hands on the ground. Defendants contend that these acts, and/or omissions, presented probable cause that Burr had violated the terms of his parole by failing to comply with law enforcement and by obstructing the official business of an

-8-

authorized official in violation of Ohio Rev. Code (O.R.C.) § 2921.31.[1]

Burr, however, contends that his acts did not obstruct Officer Burns' official duties, because the events that allegedly gave rise to the probable cause and legitimized his arrest occurred before Officer Marti arrived. Burr reasons that he could not have postponed his arrest or otherwise interfered with official business because Officer Burns only had one set of handcuffs and there were two people in need of detainment. Thus, Burr disputes that Officer Burn's investigation was prohibited, hindered, or delayed by Burr's alleged non-compliance contending Officer Marti's tardy arrival as backup, and not his own conduct, caused the delay in the arrest.

The Court has already held that genuine issues of material fact remain as to the initial stop of Plaintiff Burr. There is sufficient evidence at this juncture to create a genuine issue of material fact. Accordingly, because a reasonable juror could find that the initial detainment was without reasonable suspicion, or that the arrest was effectuated at the beginning of the encounter without probable cause, this Court **DENIES** Defendants' Motion for Summary Judgment.

### 2. *With Respect to Plaintiff Stamp*

Plaintiffs similarly allege that Officer Burns arrested Stamp when he ordered her on the ground. Defendants, however, dispute this assertion and instead contend that Stamp was merely detained pursuant to a lawful *Terry* stop and was never arrested. For the same reasons noted above, there is a genuine issue of material fact that the jury must decide regarding the question of whether an arrest was effectuated by Burns' order to drop to the ground, and therefore the Court **DENIES** Defendants' Motion for Summary Judgment with respect Stamp's Fourth Amendment claims.

---

[1] O.R.C. § 2921.31 provides in pertinent part:

> (A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.
> (B) Whoever violates this section is guilty of obstructing official business. . . .

Defendants rely on *Houston v. Clark County Sheriff Deputy John Does*, 174 F.3d 809 (6th Cir. 1999), in support of their theory that Stamp's detainment never evolved into an arrest and for the proposition that neither the use of handcuffs nor detention in a police cruiser necessarily transforms a *Terry* stop into an arrest. (Defs.' Reply to Pls.' Mem. in Opp'n to Defs.' Mot. for Summ. J. 9). *Houston*, however, stresses that the factual circumstances, including the duration and motivation of the initial detainment, are essential to determine if a *Terry* stop has ripened into an arrest. In *Houston*, the Court of Appeals ruled, "[a]though there is no bright line that distinguishes an investigative stop from a *de facto* arrest, the length and manner of an investigative stop should be reasonably related to the basis for the initial intrusion." *Houston*, 174 F.3d at 814 (internal citations omitted).

The detainees in *Houston*, like Stamp, were both handcuffed and placed in police cruisers for somewhere between thirty-five minutes to an hour. The Court in *Houston* found that such a detainment did not ripen into an arrest. Unlike Stamp, however, the *Houston* detainees were thought to be armed and were suspected of involvement in a serious and violent crime, factors which the court cited that had bearing on its holding. *Id.* at 815. The detainment of Stamp, conversely, was made following a complaint of trespass; nonetheless, she was forced on the ground at gunpoint by Officer Burns and detained, questioned, and handcuffed for twenty minutes. According to Stamp, Officer Marti did not remove the handcuffs, even after it was allegedly obvious that Stamp did not present a threat to the police officers, herself, or other persons.

Defendants refute these allegations, citing that Officer Burns was justified to order the Plaintiffs to the ground at gunpoint due to safety concerns that were present when Burr continued to walk towards him with his hands hidden behind the backpacks he was holding. Defendants also contend Officer Marti was justified in handcuffing and detaining Stamp until it was clear that Burr was not the sought-after-suspect so as to insure that she too was not involved in criminal activity.

Viewing the evidence in a light most favorable to Plaintiff Stamp, the Court concludes that genuine issues of material fact remain for resolution by the jury with respect to her Fourth

Amendment detainment claims. For instance, a jury must determine all the facts surrounding the timing of her detainment and ultimately whether it ripened into an arrest. Furthermore, a jury must assess the credibility of the testimony regarding the conflicting accounts of the events of the night and the basis to detain Stamp in the first place. For these reasons, Defendants' Motion for Summary Judgment is **DENIED** with respect to Stamp's Fourth Amendment detainment claims.

### 3. *Conclusion*

Accordingly, this Court **DENIES** Defendants' motion for summary judgment in respect to all of the Plaintiffs' Fourth Amendment wrongful arrest claims.

### C. City of Mount Vernon

The United States Supreme Court held in *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978), that municipalities may be liable under Section 1983 only for their own policies and practices and not the individual actions of employees. Thus, a municipality may only be held liable under Section 1983 when (1) a constitutional violation has occurred and (2) the municipality "is responsible for that violation." *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 505 (6th Cir. 1996). In determining whether a municipality is responsible for a constitutional violation, the Court will consider whether the municipality's acts and or omissions constituted "deliberate indifference." *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997). In order to show deliberate indifference, a claimant must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987) (adopting the test articulated in *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (en banc)). There is no respondeat superior liability under Section 1983: "a plaintiff ordinarily cannot show that a municipality acted with deliberate indifference without showing that the municipality was aware of prior unconstitutional actions of its employees and failed to respond." *Stemler*, 126 F.3d at 865 (6th Cir. 1997) (citing *Board of County Commr's of Bryan County, Ok. v. Brown*, 520 U.S. 397, 407 (1997); and *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

Here, Plaintiffs allege, *inter alia*, that the City of Mount Vernon is liable for the alleged misconduct of its police officers because it "has been, and is 'deliberately indifferent' in the area of adequately training, [and] supervising its police officers . . . ." (Pls.' Mem. in Opp., at p. 16). They assert that the City of Mount Vernon has no written policy, or rule governing the use of force, or of firearms in effecting an arrest, and no written policy, or rule governing the use of force in making an arrest. (Burr Aff., 5). Plaintiffs contend that the absence of such policy or rule resulted in Officer Burns' alleged Fourth Amendment violations. (Pls' Mem. in Opp., at p. 16).

Burr, however, is not competent to make such an assertion, and his affidavit testimony in this regard is not admissible pursuant to Rule 56(c). Affidavits, according to Fed. R. Civ. P. 56 (e), shall be made on personal knowledge. Burr asserts in his affidavit that he has personal knowledge of the Mount Vernon Police Department and its written policies. When asked about this personal knowledge in his deposition, however, he denied having any understanding of the written polices and procedures, and instead claimed his knowledge arose from local lore. (Burr Depo., 215). Stamp similarly does not assert that she has any personal knowledge of the polices of the Mount Vernon Police Department. (Stamp Depo., 120) Despite these admissions in their depositions, Defendants again asserted this same unsupported allegation in their opposition to summary judgment. Moreover, the city of Mount Vernon specifically produced copies of applicable policies and procedures related to the use of force and firearms during discovery. (*See* Merrilees Aff., Ex. 1).

Beyond offering evidence of the police department's written policies concerning use of force and firearms, Defendants have also shown that both Officer Burns and Marti are graduates of the Ohio Peace Officer Training Academy and have continued to receive training throughout their careers. (Burns Aff., ¶ 3; Marti Aff., ¶ 3). Evidence of such training, absent any contrary evidence, overcomes allegations of deficiencies in training and supervising police officers. *Fisher v. Harden*, 398 F.3d 937, 849 (6th Cir. 2005).

A party's mere allegations, absent specific facts, will not survive a motion for summary judgment. Fed. R. Civ. P. 56(e). Here, Plaintiffs have failed to provide factual evidence in support

of their claim that Mount Vernon is liable for the alleged constitutional violations of its police officers based on its failure to adequately train and supervise such officers. Indeed, Plaintiffs have ignored evidence in the record that suggests otherwise. Moreover, Plaintiffs have failed to provide any specific evidence that the City of Mount Vernon had prior knowledge of past unconstitutional acts by its police officers or that the City or any of its officials should have known that the policies and training would fail to protect against such abuses.

In light of Plaintiffs' failure to present a factual basis for their claims against the City of Mount Vernon, this Court **GRANTS** Defendants' Motion for Summary Judgment to the extent of the City of Mount Vernon's possible liability arising under Section 1983.

### D. State Law Claims

#### 1. False Arrest and False Imprisonment

Defendants move for summary judgment on Plaintiffs' false arrest and false imprisonment claims. Under Ohio law, false arrest and false imprisonment are separate and distinct torts. A false arrest refers to the unlawful deprivation of liberty by an authority with arrest powers. False imprisonment, alternatively, involves the unlawful detention by a private party. *Rogers v. Barbera*, 170 Ohio St. 241, 243, 164 N.E.2d 162 (Ohio 1960) (internal citations omitted). Here, because Defendants are police officers with arrest powers, Plaintiffs' claim, if any, is for false arrest, not false imprisonment. Therefore, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiffs' false imprisonment claims.

Ohio law dictates that a claim for false arrest requires proof of (1) a detention of the person, and (2) an unlawful detention. *Faulkner v. Faulkner*, 2000 WL 5910, at *1 (Ohio App. 6 Dist. January 7, 2000). It is undisputed that Plaintiffs were detained. Thus, Plaintiffs' false arrest claim turns on whether Burr and/or Stamps' detainment was unlawful. As noted above, the Court has concluded that genuine issues of material facts exist over whether Defendants had reasonable suspicion to detain Plaintiffs, and/or probable cause to arrest them. Accordingly, Defendants' Motion for Summary Judgment is **DENIED** in respect to Plaintiffs' false arrest claims.

## 2. Assault and Battery

Defendants similarly move for summary judgment on Plaintiffs' claims of assault and battery. In Ohio, a party is subject to liability for battery when she or he acts intending to cause a harmful or offensive contact, and when a harmful contact results. *Love v. City of Port Clinton*, 37 Ohio St.3d 98, 99, 524 N.E.2d 166 (Ohio 1988). Offensive contact is contact which is offensive to a reasonable sense of personal dignity, *id.*, whereas an assault is the willful threat or attempt reasonably places the other in fear of such contact. *Smith v. John Deere Co.*, 83 Ohio App.3d 398, 406, 614 N.E.2d 1148 (1993). In other words, an assault is the beginning of an act, which, if consummated, would constitute battery. *Matlock v. Ohio Dep't of Liquor Control*, 77 Ohio Misc. 2d 13, 665 N.E.2d 771 (Ohio Ct. Cl. 1996)(citing *Ryan v. Conover*, 59 Ohio App. 361, 26 Ohio Law Abs. 593, 18 N.E.2d 277 (1938)).

Ohio courts, however, have recognized that in making arrests police officers must sometimes act in such a manner that, when viewed on its face, would constitute assault and/or battery. Indeed, the Ohio Supreme Court held that the acts of subduing and handcuffing are acts of intentional contact which, unless privileged, constitute a battery. *Love v. City of Port Clinton*, 37 Ohio St. 3d 98, 99, 524 N.E.2d 166 (citing *Restatement of the Law 2d, Torts* (1965) 25, Section 13).[2] Here, genuine issues of fact remain for jury disposition regarding whether officers' acts were privileged under Ohio law.[3] Accordingly, Defendants' Motion for Summary Judgment on Plaintiffs' state tort

---

[2] "An arrest, whether with or without a warrant, usually involves conduct which, unless privileged, is an 'assault' or 'battery' as well as a 'false imprisonment.' If an arrest is made by a mere touching without confinement, as in the execution of a valid warrant, the touching is offensive and, unless privileged, is a 'battery'. . . ." Restatement (Second)of Torts § 118 cmt. b (1965).

[3] Defendants did not address the merits of Plaintiffs' assault and battery claims. Instead, Defendants rely on their argument that they are statutorily immune from all state law claims, including assault and battery. Although the Court addresses Defendants' assertions of immunity *infra*, the Court notes that if a police officer's conduct was not privileged, Ohio Courts have held that statutory immunity does not apply and the officer's conduct in illegally detaining or arresting an individual may constitute assault or battery. *Kaylor v. Ranking*, 356 F. Supp.2d 839, 854 (N.D. Ohio 2005).

claims of assault and battery is **DENIED**.

### 3. Intentional Infliction of Serious Emotion Distress

Plaintiffs allege, as a result of their detainment, they have incurred serious emotional distress in the form of bad dreams, flashbacks, and fear of police. (Pl. Reply to Mot. for Summ. J. 23). They seek damages for these injuries from Defendants under Ohio tort law protecting against the intentional infliction of emotional distress. The Ohio Supreme Court defined the tort of intentional infliction of emotional distress as "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 6 Ohio St. 3d 369, 374, *453, 453 N.E.2d 666, 671* (Ohio 1983). The Eighth District Appellate Court of Ohio later outlined four prima facie elements that has since been adopted by all Ohio courts. These elements are as follows:

> (1) that the actor either intended to cause emotional distress or knew or should have known that the actions taken would result in severe emotional distress;
> (2) that the actor's conduct was extreme and outrageous, that it went beyond all possible bounds of decency and that is can be considered as utterly intolerable in a civilized community;
> (3) that the actor's actions were the proximate cause of the plaintiff's psychic injury; and
> (4) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure.

*Pyle v. Pyle*, 11 Ohio App. 3d 31, 34, 463 N.E.2d 98, 103 (Ohio App. 1983).

Defendants assert that Plaintiffs have failed to provide evidence in any pleading, affidavit, or answer to interrogatory that suggests that they fulfill the fourth element, namely that they have suffered any serious emotional distress resulting from the Defendants' conduct. The Supreme Court of Ohio has held:

> By the term 'serious,' we of course go beyond trifling mental disturbance, mere upset or hurt feelings. We believe that serious emotional distress describes emotional injury which is both *severe and debilitating*. Thus serious emotional distress may be found where a reasonable person, normally constituted, would be unable to adequately cope with the mental distress engendered by the circumstances of the case. A non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia.

*Paugh v. Hanks*, 6 Ohio St. 3d 72, 78, 451 N.E.2d 759 *(Ohio 1983)*.

-15-

In light of this standard, the Court finds that Plaintiffs have not raised any issue of material fact concerning whether they have suffered from serious and debilitating emotional distress. Indeed, the record suggests the opposite. The record shows that Plaintiffs have seemingly been able to adequately cope, exemplified by Plaintiff Stamp's ability to earn her G.E.D. and Plaintiff Burr's ability to hold multiple jobs since the incident. Additionally, Plaintiffs have failed to exhibit, or at least allege, the severe symptoms outlined in *Paugh* that could amount to serious emotional distress.

Even if Plaintiffs' claims did rise to the level of severity proscribed, Ohio courts additionally require evidence to suggest some "guarantee of genuineness" of a claim. *Buckman-Peirson v. Brannon*, 159 Ohio App. 3d 12, 25, N.E.2d 830, 840 (Ohio App. 2004). To satisfy this burden, Ohio Courts often seek some evidence of medical treatment; expert medical testimony, however, is not necessarily indispensable. *Paugh*, 6 Ohio St. 3d at 80. In the absence of such expert testimony, however, the Plaintiff must present some evidence in the record beyond mere allegations suggesting a serious and debilitating emotional injury to serve as a guarantee of genuineness in order to survive a motion for summary judgment. *Buckman-Peirson*, 159 Ohio App. 3d at 25. Plaintiffs offer no such evidence.

Accordingly, this Court finds that Plaintiffs have failed to present any evidence suggesting that their injuries were serious and debilitating, or any evidence guaranteeing the genuineness of their claims. Thus, the Defendants' Motion for Summary Judgment on this claim is **GRANTED**.

### E. Qualified Immunity of Officers in Official Capacities

#### 1. Immunity from Federal Claims

Defendants Burns and Marti contend, regardless of whether they have violated Plaintiffs' constitutional rights, they are entitled to qualified immunity from Plaintiffs' Section 1983 claims. The doctrine of qualified immunity provides that, in civil suits for monetary damages, government officials acting in their official capacity and performing discretionary functions are generally shielded from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gardenhire v. Schubert*, 205 F.3d at 310-

11 (6th Cir. 2000) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Qualified immunity involves a three-step inquiry. The Court must determine (1) whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show a that constitutional violation has occurred; (2) whether the violation involved a clearly established constitutional right of which a reasonable person would have known; and (3) whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly establish constitutional rights." *Feathers v. Aey*, 319 F.3d 843, 847 (6th Cir. 2003) (quotations and citations omitted); *see also Saucier v. Katz*, 533 U.S. 194 (2001).

The Court has already determined that Plaintiffs have presented sufficient evidence with respect to their Fourth Amendment claims to survive a motion for summary judgment. Thus, the question of whether Officers Burns and Marti are shielded from liability under the doctrine of qualified immunity turns on (1) whether the rights were clearly established to the extent that Officers Burns and Marti would have reasonably known that they were violating Plaintiffs' Fourth Amendment rights, and (2) whether "it would be clear to a reasonable officer that his [or her] conduct was unlawful in the situation he [or she] confronted." *Saucier*, 533 U.S. 194 at 202.

It is clearly established that police officers must base arrests on probable cause. *St. John v. Hickey*, 411 F.3d 762, 770 (6th Cir. 2005) (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 310 (6th Cir. 2005); *Klein*, 275 F.3d at 550 (6th Cir. 2001); *Donovan*, 105 F.3d at 298 (6th Cir. 1997)). Here, assuming the Plaintiffs allegations are true, the issue turns on whether a reasonable law enforcement officer, similarly situated, would recognize that he or she lacked probable cause. The record contains sufficient evidence for the Court to conclude, for the purposes of summary judgment, that the constitutional right asserted by the Plaintiffs was clearly established. A reasonable officer would have such known that such conduct violated the constitution.

Accordingly, Defendants' Motion for Summary Judgment based on Defendants' alleged qualified immunity is **DENIED**.

### 2. Immunity from State Law Claims

Ohio police officers are immune from liability in performing a governmental function unless the officer's "act or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." O.R.C. § 2744.03 (A)(6)(b). The parties do not dispute that Defendants were engaged in a governmental function. Thus, the issue confronting the Court is whether Defendants acted with a malicious purpose, in bad faith, or in a wanton or reckless manner.

Here, when viewing the evidence in the light most favorable to the nonmoving Plaintiffs, a reasonable jury could conclude that Defendants acted in such a malicious manner. In light of the officers' past experience with Plaintiff Burr, Defendants' reaction to the offense of trespass, and the fact that neither Plaintiff matched the description of the sought-after-suspect, this Court concludes genuine issues of material fact exist as to whether immunity under O.R.C. '§ 2744.03 applies. Accordingly, the Court **DENIES** Defendants' Motion for Summary Judgment on the basis of statutory immunity.

### IV.

Based on the foregoing, Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART.** This case will be set for trial as soon as practicable by separate Order from the Court.

**IT IS SO ORDERED.**

DATED 7-7-2006

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE